IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| PAULA KINGMAN | ) | |
| and CALVIN KINGMAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 06-0907-CV-W-HFS |
| | ) | |
| DILLARD'S, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

As discussed at the recent pretrial conference, Dillard's has pending a motion for summary judgment (Doc. 100) with two contentions: (1) on undisputed facts plaintiffs do not have a submissible case of storekeeper liability, and (2) plaintiff Calvin Kingman, in his spousal capacity, could not recover for loss of his wife's domestic service and caregiver service. Consistently with my discussion with Dillard's counsel, I conclude that neither argument justifies pretrial rulings in favor of the store. A sketch of my rationale seems adequate here, noting that I recognize a continuing obligation in this court-tried case to change my mind if appropriate in light of the evidence at trial and further consideration of applicable law.

(1)  Storekeeper Liability

The facts relied on by Dillard's will be assumed to be true for present purposes. Essentially, plaintiffs contend and Dillard's assumes, that Paula Kingman was injured by a metallic fixture serving as a rack for clothing, which became detached from the wall. Having remained in place for an apparently considerable period it seems likely that some tugging and/or overloading caused the incident. In a self-service store like Dillard's, this could most likely have been from plaintiff's

conduct or the conduct of another customer (stacking the rack while examining merchandise).

Overloading by store employees is possible, though presumably unlikely (since the event was

unusual, whereas customer pawing and rearranging merchandise frequently occurs). Even if

overloaded, the triggering event may well have been plaintiff's touching the clothing. In the absence

of expert testimony by either side, a trier would need to rely on common sense and experience.

Under the law of Missouri prior to the Sheil decision in 1989 (781 S.W.2d 778) and still

apparently existing elsewhere (see defendant's Florida case) the strong possibility of customer fault

or involvement in overloading might have been fatal to the claim. There may be a fair inference that

"another customer disarranged the goods." Patton v. May Dept. Stores Co., 762 S.W.2d 38, 40 (Mo.

banc 1988). But Judge Blackmar's opinion in Sheil essentially makes the self-service storeowner

responsible for customer conduct, possibly vicariously, on some theory that customers are invited

to do selection work as substitutes for store employees (as mentioned by the Blackmar opinion), or

more likely indirectly, in that the storeowner needs to be vigilant and quickly corrective when a

customer creates danger, such as overloading a clothing rack. Under Sheil the storeowner cannot

simply sit back until notified of a danger and successfully claim to have exercised "ordinary care."[1]

There is of course a logical possibility that Paula Kingman was the sole cause of the incident,

by grabbing or pulling forcefully enough to cause a fixture to collapse. The fragility of the fixture,

as emphasized by Dillard's to show unlikeliness of serious harm, also suggests that it might not take

much force to cause the fixture to fall. Apparently Paula Kingman's recollection is vague, but I

doubt this is fatal. It seem unlikely that a forceful grabber who causes a clothing rack to fall would

---

[1]As a practical matter the dissent says this may create insurer liability. Judge Blackmar
disputes this as a legal concept.

be totally unaware of what she has done. Since she claims no memory of such conduct I conclude there is a credibility issue for trial.

Whether this is presented as a res ipsa loquitur case seems a matter of semantics. There is no specific proof of negligent causation (proof of defect in anchoring the fixture, for example) but I suppose fixtures do not generally fall by themselves, unless perhaps it is a very old fixture that has been weakened by time. Human causation seems probable, either by using an inherently fragile fixture, or one that is poorly secured, for an inappropriate purpose, or by overloading the fixture. Overloading seems most probable, but there is no specific proof. I am satisfied that customer overloading, like customer placement of a box in Sheil, offers no sure defense. Nor does this signify "lack of control," if Sheil is given its natural significance, and watchfulness and corrective action may be needed.

Dillard's offers nothing by way of new rulings in Missouri making Sheil inappropriate in this context, or inappropriate for res ipsa loquitur purposes. The Reply Brief seeks to distinguish Sheil because this case is more probably an instance of "structural failure" unrelated to loading of the rack – which seems improbable to me on the current record. It is conceivable that having been challenged by this ruling Dillard's will ultimately locate some recent authority which would support finding a deficiency of proof of liability, but that would necessarily be post-trial or during trial. At present, I am satisfied the motion should be denied.

In further justification for denying summary judgment here I note my occasional reliance on discretionary authority to deny a motion of this nature when I am not satisfied that a paper presentation adequately supplied the nuances in litigation, and when I conclude, as here, that fresh testimony in court and an opportunity to ask questions may serve the administration of justice. See,

e.g., <u>Dechman v. Stahl Specialty Co.</u>, 538 F. Supp. 2d 1153, 1163 (W.D. Mo. 2008); <u>Rodkey v. Trans World Airlines, Inc.</u>, 1997 WL 823568 (W.D. Mo.).

(2)  Preclusion of Husband's Claim

Dillard's contends that, even assuming liability, I should bar the husband's consortium-based claim for his wife's reduced household services and ability to provide caretaker service for him, in his quadriplegic condition, on the theory that the claim for the wife's reduced ability to perform housework and to offer caretaker service is exclusively a loss compensable to wife.  This contention appears to be unsound under Missouri law.

Defendant's principal support is in <u>LaRose v. Washington University</u>, 154 S.W.3d 365 (Mo. App. E.D. 2004).  That case does rule that the deceased wife, the victim of medical malpractice, had a claim for loss of ability to perform household services.[2]  There is language that the impairment is a "compensable item of damage to the wife and not to her husband."  154 S.W.3d at 372.  This seems to be dicta, and I believe it is contrary to the <u>Collier</u> decision on which <u>LaRose</u> relies, as well as a decision by the Missouri Supreme Court.

The appellate decision in <u>Collier v. Simms</u>, 366 S.W.2d 499 (Mo. App. K.C. 1963), is rather difficult to understand.  The court says one must "distinguish between the <u>value</u> of domestic services and the personal <u>right</u> to perform them."[3]  The court said the jury was not "to consider or award damages to plaintiff (wife) arising out of any loss to her husband by reason of any physical inability

---

[2]Somewhat unclearly the court allowed valuation that was "more or less" what an outside source would likely charge.

[3]I infer that she can recover for loss of the right, and the husband can obtain the value of her previous services.

on plaintiff's part to perform her domestic and marital duties." Such a loss is thus recognized in Collier, and presumably would be recoverable by the husband.

It is true that the court approved the comment by the trial judge that "her ability to work and labor" would be a "compensable item to her and . . . is not properly a subject that is compensable to her husband." In context, the appellate court was saying that the wife's <u>right</u> to perform domestic service was not compensable in favor of the husband. But this was not a ruling that the husband had suffered no loss, and could not be compensated for what he was deprived, by reason of his wife's condition.

If there is doubt as to the <u>Collier</u> articulation, that court's reliance on <u>State ex rel. St. Louis Public Service Co. v. McMullan, Mo.</u>, 297 S.W.2d 431 (1956), should make plain that the husband's right to recover for lost domestic service and the like is unquestioned. That is exactly what was at stake in <u>McMullan</u>, and the Supreme Court allowed an examination premised on the husband's valid claim, which Dillard's here disputes. No case is cited from the Missouri Supreme Court which even arguably departs from the husband's right to compensation for his loss, as recognized in <u>McMullan</u> and mentioned in <u>Collier</u>.

What may have caused some ambiguity in appellate opinions, as recognized by plaintiffs here, is that if both husband and wife can recover for much the same thing, as the cases seem to hold, there would be danger of double recovery. That can be avoided by me as trier here, and I reject any claim by Dillard's that the husband lacks a potential damage claim, apparently measurable in his case by the cost of substitute service.

The motion for summary judgment (Doc. 100) is therefore DENIED.


/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

December  28 , 2009

Kansas City, Missouri