IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| PAULA KINGMAN and CALVIN KINGMAN, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 06-0907-CV-W-HFS ) |
| DILLARD'S, INC., | ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This court-tried case has been returned by the Court of Appeals for reconsideration of the $1 million damage award to Calvin Kingman, a quadriplegic, because of the loss of nursing services from his wife Paula Kingman resulting from her shoulder injury at defendant's store. The factual findings and several of my legal conclusions were affirmed, but the large, unprecedented recovery under the consortium claim was reversed.

On new briefing, plaintiff seems to contend that I was right the first time, but that the excessiveness found by the Court of Appeals could be remedied by simply trebling the $186,388 recovery of Mrs. Kingman, thus cutting Calvin Kingman's recovery roughly in half. This would apparently limit the time he can remain at home, with professional nursing, as the trial evidence shows is required by the injury to Mrs. Kingman. His future presumably would ultimately include going to a nursing home on Medicaid when the new funding runs out.

**I.**

Defendant Dillard's asks me to disallow any recovery for loss of nursing services by Mrs. Kingman, even though such services seem similar in kind to other family assistance home care and

housekeeping that is typical. Why cooking would be a covered service but nursing would not is unexplained, except to claim it is not mentioned in the illustrations in prior Missouri cases.

Defendant fails to note the repeated reference to "professional" nursing services in the appellate opinion as the disallowed measure of damages. "Professional" was, I am convinced, mentioned in a categorical and significant manner in the opinion. While the Court of Appeals did not provide me with an advisory opinion as a guide to reconsideration, it seems clear that I should not deem myself precluded from reconsidering the legal basis for an allowance for the principal loss of services that did occur, as long as it is not measured by the cost of professional nursing services.

Plaintiff cites Missouri cases that support making an allowance for loss of nursing services, which are noted by the Court of Appeals in the controlling paragraphs. <u>Kingman v. Dillard's, Inc.</u>, 643 F.3d 607, 616-17 (8th Cir. 2011).[1] As the opinion states, "some" nursing services are compensable, and I need to find a limitation that at least will exclude "professional" services. However I draw the line, it will be novel in the context of those circumstances.

The problem with an allowance for "professional nursing services" could be that it relates to unusual heavy-duty nursing or simply the exorbitant cost of such services. I conclude it is the latter,[2] but the opinion cites for consideration a federal case based on Mississippi law which has

---

[1] The only pertinent new case I find is <u>Smith v. Houston</u>, 551 So.2d 551 (Fla. Dist. Ct. App. 1989), where a jury's rejection of a consortium claim based on health care for a paraplegic spouse was remanded for a new trial. The court accepted the legal basis for the claim without analysis.

[2] The Court of Appeals notes that "Missouri courts have allowed the uninjured spouse to recover for providing additional nursing services of the sort that professional care-givers ordinarily provide." <u>Kingman</u>, 643 F.3d at 616. I would suppose that if the uninjured spouse can recover for such new services, the loss of such services that have previously been supplied would be subject to similar compensation, but in the name of loss of consortium. What has not been considered, however, is the compensation rate at which such services should be valued. The ruling I am to follow makes emphatically clear that charges made by professional care-

2

language arguably precluding recovery for heavy-duty nursing in general or long hours of nursing. Wright v. Standard Oil Co., Inc., 470 F.2d 1280, 1292-93 (5th Cir. 1972). Wright involved payment for a mother's sacrificial service in the care of a paraplegic child. Unlike what Dillard's advocates here, the tortfeasor was required to pay for her services. Her right to recover was not, however, treated as a consortium feature that the husband could invoke.

Somewhat in contrast with Wright is an Iowa case, and an early New York case there cited, where it was said that a wife's services in "taking care of the husband's invalid mother, who was living as a member of the family . . . were within the line of duties arising from the marital relation." Bohanon v. Maxwell, 190 Iowa 1308, 181 N.W. 683, 687-88 (1921). Presumably loss of services of the wife could be compensated for in that context, using a loss of consortium theory or something akin to that.

A moment may be spent in considering how Dillard's would use Wright. In effect it would sanction child abandonment, when the burden of nursing is extraordinary. That conduct must be based on an assumption that a parent with a paraplegic child has the right to rely on a public safety net, and to make the child a public charge. One may suppose a Missouri court, faced with this problem, and without relying simply on "deep pocket jurisprudence," would be strongly tempted to place the loss on the party whose negligence indirectly created the issue. A further practical problem in this case is the less certain future of a public safety net for adults.

Although the language of Wright and Bohanon might suggest contrary results, neither of them deals with the situation here. Wright was actually a decision favoring the family, in that treating the wife's nursing services as a loss of consortium claim by the husband would have

---

givers should not be used.

3

reduced the recovery, given that it would have been subject to a discount because the husband was partially at fault in the injury suffered by the child. Under the ruling, the wife made a full recovery.

The loss of consortium claim is stronger here than in Wright and Bohanon, because Missouri law does not recognize a family claim, as such, on behalf of a child, as the Court of Appeals noted, citing Powell v. American Motors Corp., 834 S.W.2d 184 (Mo. 1992). A husband's right to have his wife devote nursing care for his invalid mother, as a member of the family, is also much more attenuated than the claim for his own care, as asserted here.

Mindful of the typical marriage vow of loyalty in sickness and in health, I do not think the loss of prior services of Mrs. Kingman should be eliminated from Calvin Kingman's claim on a theory that abandonment of a spouse should be "normally expected." That is the Restatement test, which is probably usable in Missouri and thus controlling here, as the opinion suggests. See Kingman, 643 F.3d at 616. The only case found by the Court of Appeals or the parties that does exclude from recovery a spousal nursing claim is one in which it was duplicative of what was already presumably being compensated for. Pretre v. United States, 531 F. Supp. 931, 936 (E.D. Mo. 1981).

Recognizing that my rulings are mere predictions as to Missouri law, and should not be unduly creative, we are dealing with a factual appraisal of "normal" conduct, in a real-life setting, that I cannot evade, even though there is no case-law guidance that eases my task. I remain convinced that I cannot create heavy-duty nursing, as a separate and definable category, exempt from consortium recovery.[3]

---

[3]If intended, the Court's opinion could simply have concluded that the nursing service of Mrs. Kingman, as described in the testimony, should not be considered on remand. I infer that the panel as a whole wanted me to take another look at that issue, as well as looking for other sources of possible consortium recovery. While I am trying to observe the admonition that I be

4

I conclude that the panel's repeated reference to professional nursing services as an inappropriate source of compensation was the limitation that must be followed, just as the panel directed me to the issue of cost in connection with the total recovery for loss of consortium. Thus I will avoid an amount greatly out of line with the personal injury recovery of Mrs. Kingman.

**II.**

An allowance of $150,000 in damages would be downright timid, in light of the very great and permanent disruption of Calvin Kingman's nursing schedule, as found in my original ruling. That damage clearly outweighs the significant damage suffered by Mrs. Kingman – even though such a result is quite unusual.[4] An allowance of $300,000 or more would, in my judgment, be disobedient to the appellate view that a recovery greatly in excess of the recovery by the injured party would not be permitted by the Missouri courts. Hopefully a $250,000 award in the circumstances of this case would be within the permissible range.

I acknowledge some dissatisfaction with an award that is far from compensatory and seems to hurry Calvin Kingman's commitment to a nursing home. I think this would trouble the Missouri judges. In searching for some principled justification, I can propose one rationale. Paying for professional nursing for two four-hour segments, as plaintiff requests, would relieve Mrs. Kingman

---

cautious in predicting local law, it would seem that defendant should not be rewarded for removing the case to federal court.

[4]In a case where there was a loss of consortium verdict of $30,000 when the injured spouse received only $20,000, the Tennessee appellate court affirmed, noting that the defendant insurer did not argue that "damages for loss of consortium can never be greater" than damages for the injured party. Clark v. Shoaf, 209 S.W.3d 59 (Tenn. Ct. App. 2006). Reference was made to a Connecticut case where the surviving spouse in a wrongful death case recovered $2 million for simple loss of consortium (not involving actual services), as against the recovery of $1 million for the husband's loss of consortium. Blake v. Neurological Specialists, P.C., 2003 WL 21267441 (Conn. Super. Ct. May 16, 2003) (ordering a $1 million remittitur).

of some nursing activities that she is quite capable of performing.  She can still bathe, feed, change bedpans and the like.  Supplementary nursing is only needed for heavy lifting and adjustment, with available lifts.  The compensation for that limited service, if obtainable separately, would be very much less than the full charges for nursing.  A $250,000 award would, I suppose, cover many years of simply lifting and adjusting.  While this somewhat justifies the amount allowed here, I acknowledge it seems unrealistic, as I have no expectation that professional nursing service is or will be available for those brief segments of time when services Mrs. Kingman cannot perform would be needed.

On further consideration, and in light of the appellate ruling, $250,000 for Mr. Kingman seems the most (and least) that I should award.[5]  Judgment shall be entered accordingly in favor of plaintiff Calvin Kingman and against defendant Dillard's.  SO ORDERED.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

December  12 , 2011

Kansas City, Missouri

---

[5] A "double recovery" theory argued by Dillard's earlier is no longer pursued, although noted by the Court of Appeals.  See Kingman, 643 F.3d at 617, n.3.  As stated in my initial ruling, 2010 WL 2710716, page 4, presumably any prior settlement fund from Mr. Kingman's original injury has been expended long ago in nursing services – unless retained as a result of services by his wife, relatives and neighbors.  A tortfeasor would presumably be barred from taking advantage of collateral source assistance.